Filed 6/17/22  In re Serenity D. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re SERENITY D. et al., Persons Coming Under the Juvenile Court Law. | B314891<br><br>(Los Angeles County Super. Ct. No. 21CCJP02117A-B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>AARON D.,<br><br>        Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Stacy Wiese, Judge.  Affirmed.

Landon Villavaso, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel and Kelly Emling, Social Justice Counsel, for Plaintiff and Respondent.

_____

Aaron D., father of seven-year-old Serenity D. and four-year-old Levi D., appeals from the jurisdiction findings and disposition order declaring Serenity and Levi dependents of the juvenile court and releasing them to Aaron and their mother, Vanessa J.  On appeal Aaron argues the court's jurisdiction finding he had engaged in domestic violence was not supported by substantial evidence.  He also contends the court abused its discretion by failing to terminate dependency jurisdiction at the conclusion of the combined jurisdiction/disposition hearing.  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

1.  *The Detention of Serenity and Levi*

On April 16, 2021 the Los Angeles County Department of Children and Family Services received a report that, on the previous day, Aaron and Vanessa had engaged in a physical altercation in front of Serenity.  When interviewed by a Department social worker the following week, Aaron explained he and Vanessa had been married for 10 years and had separated in January 2021.  On the day of the altercation Aaron was home with Vanessa, his two brothers, Alan H. and Abram H., and Serenity.  Earlier that day Vanessa and Aaron had been sexually intimate, and Vanessa had surreptitiously recorded the encounter on her cell phone.  She threatened to post the video to her social media account and send it to Aaron's girlfriend.  Aaron took the phone from Vanessa to try to delete the video.  According to Aaron, Vanessa began slapping and punching him in an

2

attempt to get the phone back. Vanessa then took a butcher knife from the kitchen and waved it threateningly at Aaron. Alan was able to restrain Vanessa; but, after she threatened to stab Alan, Aaron told him to release her. Still waving the knife, Vanessa pursued Aaron from the kitchen to his bedroom. At some point Vanessa pinned Aaron against a wall with the knife and inflicted two superficial cuts to Aaron's neck, which had healed by the time the social worker interviewed him. Eventually either Aaron or one of his brothers was able to disarm Vanessa. She continued to attack him, ripping his shirt and biting him on his torso. Aaron, still holding Vanessa's cell phone, went downstairs to the parking lot and threw the phone over the fence. Vanessa jumped over the fence, falling and injuring herself. Vanessa then left to pick up Levi at school. Once at the school Vanessa notified staff Aaron had attacked her, and police were called. One of Aaron's brothers also called the police. After taking statements from Vanessa, Aaron, Alan and Abram, the police officers determined Vanessa was the "dominant aggressor" and arrested her for domestic violence and criminal threats.

Aaron told the social worker that Serenity had been in the room when the fight began and she saw Vanessa take out the knife. After Serenity began to cry, Abram took her into a bedroom so she would not witness the rest of the fight. Aaron said there had been only one previous incident of domestic violence in the relationship, over nine years earlier, which involved Vanessa punching Aaron. Aaron informed the social worker he did not intend to reconcile with Vanessa and he would be filing for divorce. Aaron obtained a temporary restraining order against Vanessa on April 20, 2021.

3

Vanessa gave the social worker only a brief account of the incident. She admitted to filming explicit video of Aaron on her cell phone and stated the fight began when Aaron took her phone and would not return it. Vanessa said Aaron and his brothers "ganged up on her" and she picked up the knife in self-defense. Vanessa told the social worker she understood her actions that day were wrong and nothing similar had ever happened before. Vanessa's statement to police officers the day of the incident contained additional details. The police report stated that, when police initially responded to the school to speak to Vanessa, she was "in a state of panic" and was too "frantic" to explain what had happened. After being taken to the hospital, Vanessa was able to tell the police officers that, after taking the cell phone from her, Aaron had pushed her against a wall, put his forearm against her neck and squeezed her neck with his other hand. Vanessa said she had been unable to breathe. Vanessa was able to get away from Aaron and grabbed the knife from the kitchen. After Aaron's brother took the knife from her, Vanessa and Aaron continued to wrestle for the cell phone. Vanessa was being treated for pain to her lower back. The police officer observed a small bruise on Vanessa's forearm.

The social worker interviewed Serenity a week after the incident. Serenity told the social worker, "Mommy almost cut daddy. I was a scared." However, when police officers spoke to Serenity the day of the incident, they reported she "appeared to have no knowledge that an incident even occurred."

Abram's and Alan's statements to the police officers and the social worker mostly corroborated Aaron's statements. However, the police report noted, "there appeared to be some confusion as to who was the one that wrapped their arms around

4

[Vanessa] and who retrieved the knife" after she had been disarmed, as both Abram and Alan claimed they had been the one to do so.

The Department filed a petition on May 6, 2021 pursuant to Welfare and Institutions Code section 300, subdivisions (a) and (b)(1),[1] alleging Aaron and Vanessa had a history of engaging in violent altercations, and recounting details of the April 15, 2021 incident. The petition alleged the parents' violent conduct endangered Serenity's and Levi's physical health and safety.

At the detention hearing on May 11, 2021 the court stated that, although the violence between Aaron and Vanessa was "probably mutual," the court was particularly concerned that Vanessa had threatened Aaron with a knife in front of Serenity. Accordingly, the court detained Serenity and Levi from Vanessa and released them to Aaron. Aaron's counsel requested a stay away order, noting the temporary restraining order expired the day of the hearing. Vanessa's counsel also requested a stay away order, explaining Aaron had shown up at Vanessa's workplace the prior week. The court issued mutual stay away orders and ordered unmonitored visits for Vanessa.

2.    *The Jurisdiction/Disposition Report*

In a report filed July 14, 2021 the Department summarized additional interviews with the family. Aaron's account of the altercation was consistent with his earlier statements. He stated, "We were arguing over the phone. I had her phone, she fought for the phone. It escalated to her getting a knife. . . . We were wrestling around. I understand she was upset but it was

_____

[1]    Statutory references are to this code.

5

just the way she went about it, especially since my daughter was there."

Vanessa initially refused to discuss the incident, telling the social worker to read her earlier statements. She subsequently agreed to be interviewed, as described in a report filed by the Department on August 16, 2021. Vanessa told the social worker that she and Aaron "had an intimate moment and I had a video recording of the intimate moment. After that he took my phone to try to delete the video. We wrestled in the house over the phone, I was looking for the phone." According to Vanessa, the argument began playfully but became more aggressive. She said they "tussled" for approximately 30 minutes before Aaron's brothers intervened. Vanessa continued, "I got tired of fighting his brothers. I grabbed a knife from the kitchen and his one brother took my daughter to his room to get her out of the way." Vanessa admitted she had held the knife to Aaron's throat but insisted she never intended to hurt him. Contrary to her earlier statement, Vanessa said Aaron pushed her against the wall after she had dropped the knife. Vanessa explained she had been hurt that Aaron was dating someone else. She said that she "wanted to use the video as leverage between him and [the other woman]. Now, I see I could have gone about it in a different way."

In a June 2021 interview Serenity told the social worker, "I saw mommy holding a knife, she almost cut daddy's neck. They were arguing because daddy stole mommy's phone. It was kinda scary. Mommy got angry because daddy got a new friend, a grown-up lady." The social worker reported Serenity and Levi did not appear to have any behavioral issues, were physically healthy and were bonded to Aaron.

Vanessa told the social worker she wanted to reconcile with Aaron. Aaron initially told the social worker he did not want to reconcile; his goal was to cordially coparent with Vanessa. However, in a last minute information filed on August 25, 2021 the Department reported a social worker had "spoke[n] to the parents . . . who informed her that they wish to work on their relationship and reunite as a couple. The parents both admitted to infidelity in their relationship, and the mother stated that on the date of the incident that was the basis for what led to the Intimate Partner Violence incident. The mother admitted to [the social worker] that she 'took it too far' and realized that she placed her daughter, Serenity, in harm's way." The Department further reported it had difficulty reaching Aaron throughout the case and believed he was purposely making it difficult for the Department to schedule interviews and conduct visits with the children.

3. *The Jurisdiction/Disposition Hearing*

At the jurisdiction/disposition hearing on August 30, 2021 Vanessa's counsel argued the petition should be dismissed because Serenity had not been harmed and there was no current risk of harm, as Aaron and Vanessa had been abiding by the stay away order. Aaron's counsel asked the court to dismiss the petition as to Aaron, arguing Vanessa had been the aggressor and Aaron had acted appropriately after the altercation by obtaining a temporary restraining order and filing for divorce. Aaron's counsel also informed the court that, contrary to the Department's most recent report, Aaron did not intend to reconcile with Vanessa. Counsel for Serenity and Levi requested the court sustain the petition, stating that, even if Aaron had not been the initial aggressor, he provoked the incident by taking

7

Vanessa's phone and continued to fight with her rather than returning it.

The juvenile court sustained the petition. The court found Aaron and Vanessa had been mutually aggressive and Aaron had at least partially provoked the situation. The court observed this was the second domestic violence incident in the relationship and had been witnessed by Serenity.

Proceeding immediately to disposition, Vanessa and the minors' counsel requested the children be released to both parents. Aaron requested the court grant sole physical custody to him and close the case. He argued he had provided a safe home for Serenity and Levi in the months since the case had been opened. The Department argued the case should remain open and the children should continue to reside with Aaron and have unmonitored visitation with Vanessa.

The juvenile court declined to terminate jurisdiction and released Serenity and Levi to both parents on the condition the parents reside separately. The court ordered family maintenance services, including a domestic violence program, for Vanessa, individual counseling for both parents and conjoint counseling if the parents decided to reconcile. The court also ordered the stay away order to remain in place.

Aaron filed a timely notice of appeal.

## DISCUSSION

1. *We Have Discretion To Review the Jurisdiction Findings*

Vanessa did not appeal, and Aaron does not challenge the juvenile court's jurisdiction findings as to her. Those findings provide an independent basis for affirming dependency jurisdiction over Serenity and Levi regardless of any alleged error

8

in the findings as to Aaron.  (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1492 [jurisdiction finding involving one parent is good against both; ""the minor is a dependent if the actions of either parent bring [him or her] within one of the statutory definitions of a dependent""]; see *In re M.W.* (2015) 238 Cal.App.4th 1444, 1452; *In re Briana V.* (2015) 236 Cal.App.4th 297, 310-311.)  As a result, even if we reverse the findings as to Aaron, the juvenile court would still be authorized to exercise jurisdiction over the children and to enter all reasonable orders necessary to protect them, including orders binding on Aaron that address conduct not alleged in the petition.  (*In re Briana V.*, at p. 311 ["The problem that the juvenile court seeks to address need not be described in the sustained section 300 petition.  [Citation.]  In fact, there need not be a jurisdictional finding as to the particular parent upon whom the court imposes a dispositional order"]; *In re I.A.*, at p. 1492 ["[a] jurisdictional finding involving the conduct of a particular parent is not necessary for the court to enter orders binding on that parent, once dependency jurisdiction has been established"]; see generally § 362, subd. (a) [the juvenile court "may make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child"].)

Nonetheless, in limited circumstances reviewing courts have exercised their discretion to consider an appeal challenging a jurisdiction finding despite the existence of an independent and unchallenged ground for jurisdiction when those findings serve as the basis for disposition orders also challenged on appeal.  (*In re J.C.* (2014) 233 Cal.App.4th 1, 4; see *In re D.P.* (2015) 237 Cal.App.4th 911, 917.)  Because Aaron makes such a challenge in this case—he argues the order at disposition

continuing jurisdiction was an abuse of discretion—we exercise our discretion and review the jurisdiction findings.

    2.    *Substantial Evidence Supports the Domestic Violence Finding as to Aaron Under Section 300, Subdivision (b)(1)*

    a. *Governing law and standard of review*

The purpose of section 300 "is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm." (§ 300.2; see *In re A.F.* (2016) 3 Cal.App.5th 283, 289; *In re Giovanni F.* (2010) 184 Cal.App.4th 594, 599.)

Section 300, subdivision (b)(1), allows a child to be adjudged a dependent of the juvenile court when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child." A jurisdiction finding under section 300, subdivision (b)(1), requires the Department to prove three elements: (1) the parent's or guardian's neglectful conduct or failure or inability to protect the child; (2) causation; and (3) serious physical harm or illness or a substantial risk of serious physical harm or illness. (*In re L.W.* (2019) 32 Cal.App.5th 840, 848; *In re Joaquin C.* (2017) 15 Cal.App.5th 537, 561; see *In re R.T.* (2017) 3 Cal.5th 622, 624 ["section 300(b)(1) authorizes dependency jurisdiction without a

finding that a parent is at fault or blameworthy for her failure or inability to supervise or protect her child"].)

Although section 300 requires proof the child is subject to the defined risk of harm at the time of the jurisdiction hearing (*In re D.L.* (2018) 22 Cal.App.5th 1142, 1146), the court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child. (*In re I.J.* (2013) 56 Cal.4th 766, 773; *In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1383; *In re N.M.* (2011) 197 Cal.App.4th 159, 165.) The court may consider past events in deciding whether a child currently needs the court's protection. (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1215-1216; *In re N.M.*, at p. 165.) A parent's "'[p]ast conduct may be probative of current conditions' if there is reason to believe that the conduct will continue." (*In re S.O.* (2002) 103 Cal.App.4th 453, 461; accord, *In re J.N.* (2021) 62 Cal.App.5th 767, 775 ["[e]vidence of past conduct may be probative of current conditions and may assist DCFS in meeting [its burden of proof]"]; *In re Kadence P.*, at p. 1384.)

"'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court."'" (*In re*

11

*I.J., supra*, 56 Cal.4th at p. 773.) We review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence such that a reasonable trier of fact could find that the order is appropriate. (*Ibid*.; accord, *In re I.C.* (2018) 4 Cal.5th 869, 892.)

> b. *The Department presented sufficient evidence domestic violence between Aaron and Jessica placed the children at substantial risk of serious physical harm*

Exposure to domestic violence may serve as the basis for a jurisdiction finding under section 300, subdivision (b)(1).[2] (*In re R.C.* (2012) 210 Cal.App.4th 930, 941.) ""Both common

---

[2]  As we recently held in *In re Cole L.*, the "potential for accidental injury during parents' physically violent fights in the presence of bystander children," without more, will not satisfy the statutory requirement for dependency jurisdiction based on substantial risk of nonaccidental injury under section 300, subdivision (a). (*In re Cole L.* (2021) 70 Cal.App.5th 591, 603; but see *In re Nathan E.* (2021) 61 Cal.App.5th 114, 122 ["[w]e firmly reject mother's contention that domestic violence cannot be the basis for juvenile court jurisdiction under section 300, subdivision (a)"].) However, because substantial evidence supports the juvenile court's findings as to Aaron on the section 300, subdivision (b)(1), count, we need not consider his challenge to the court's subdivision (a) finding. (See *In re D.P., supra*, 237 Cal.App.4th at p. 917; *In re J.C., supra,* 233 Cal.App.4th at p. 4; see also *In re I.J., supra,* 56 Cal.4th at p. 773 ["'[w]hen a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence"]; *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451 [same].)

12

sense and expert opinion indicate spousal abuse is detrimental to children.""" (*Id.* at p. 942; see *In re S.O., supra,* 103 Cal.App.4th at pp. 460-461 ["'[domestic violence in the same household where children are living *is* neglect; it is a failure to protect [them] from the substantial risk of encountering the violence and suffering serious physical harm or illness from it'"]; see also *In re T.V.* (2013) 217 Cal.App.4th 126, 135 ["[e]ven though [the child] had not been physically harmed, the cycle of violence between the parents constituted a failure to protect her"].)

Aaron argues the evidence did not establish his behavior placed the children at risk because Vanessa was "the aggressor and sole combatant" and he was the "victim fending off a violent attack by a person who placed a knife to his throat." This argument disregards the conflicting evidence Aaron did not merely act in self-defense but was aggressive toward Vanessa. While Vanessa's accounts of the incident were not entirely consistent, in one of her interviews she stated Aaron and his brothers ganged up on her and Aaron pushed her against the wall and choked her before she grabbed the kitchen knife. This account of the incident amply supports a finding Aaron was an aggressor during the fight. Even if the court credited an alternate version of events, it was undisputed Aaron refused to return Vanessa's phone and the fight lasted for several minutes, progressing through various rooms and outside into the parking lot. This evidence supports the reasonable inference Aaron at the very least prolonged the altercation.

Aaron also argues the evidence did not establish the children were at current risk of harm by the time of the jurisdiction hearing because the fight had been an isolated incident and the violence was not likely to continue. We agree

13

with Aaron that a single domestic violence incident, even if considered with another episode from nine years earlier, may not be sufficient to support a finding of ongoing domestic violence or a history of such violence. However, in certain circumstances one episode of domestic violence reasonably establishes a current risk of harm to the children. (*In re J.N.* (2010) 181 Cal.App.4th 1010, 1025-1026.) "In evaluating risk based upon a single episode of endangering conduct, a juvenile court should consider the nature of the conduct and all surrounding circumstances. It should also consider the present circumstances, which might include, among other things, evidence of the parent's current understanding of and attitude toward the past conduct that endangered a child, or participation in educational programs, or other steps taken, by the parent to address the problematic conduct in the interim." (*Ibid.*)

Here, the recent episode of domestic violence was a significant one involving one parent threatening the other with a knife in front of their daughter. Despite the length of the confrontation neither Aaron nor Vanessa expressed any contemporaneous concern for Serenity's safety or well-being—she was removed from the room by her uncle rather than the protective actions of either parent. While both parents stated they were willing to pursue therapy and/or counseling, neither exhibited meaningful insight into his or her role in the altercation. Aaron stated the argument "escalated," but did not appear to take any responsibility for the part he played in that escalation. Likewise, Vanessa said she had "gone too far," but it was not clear which actions she realized were inappropriate or that she understood how dangerous her behavior had been. Aaron's filing for dissolution of marriage and the parents' ability

to abide by the stay away order may mitigate the risk of future harm to the children, but a significant risk nonetheless remained. There were conflicting reports as to whether Aaron and Vanessa intended to reconcile. At the very least, it was undisputed Vanessa wished to continue the relationship. Given that Aaron and Vanessa's separation had not prevented them from being sexually intimate and engaging in domestic violence previously, it was reasonable for the court to infer there was a continuing risk they would have contact in the future. Under these circumstances, the single episode of domestic violence was sufficient to support a finding the children were at risk of harm at the time of the jurisdiction hearing. (Cf. *In re Cole* (2021) 70 Cal.App.5th 591, 603 [physical danger to children was minimal where domestic violence incident "involved, at most, some pushing and grabbing . . . and took place outside the presence of the children"].)

3.     *The Juvenile Court Did Not Abuse Its Discretion by Continuing Its Jurisdiction at the Disposition Hearing*

Aaron contends the juvenile court erred by failing to terminate dependency jurisdiction over Serenity and Levi at the conclusion of the disposition hearing. Rather than place the children in both parents' custody with supervision, Aaron argues, the court should have terminated jurisdiction with an order granting sole physical custody to Aaron.

Once the juvenile court finds a basis to assume jurisdiction over a child, "the court is then required to hear evidence on the question of the proper disposition for the child." (*In re Destiny D.* (2017) 15 Cal.App.5th 197, 205.) "Typically, once the child has been adjudged to be a dependent child pursuant to section 360, subdivision (d), the juvenile court determines what services the

child and family need to be reunited and free from court supervision." (*Ibid*.)  However, at the disposition hearing the court is not required to continue dependency jurisdiction over the child and order the parents to participate in services.  Instead, the court "retains the discretion in an appropriate case to terminate its jurisdiction at the close of a disposition hearing when it finds services and continued court supervision are not necessary to protect the child." (*Id*. at p. 208.)  But termination of jurisdiction at the disposition hearing should not be the norm. "To the contrary, it will be an unusual case when protections imposed at disposition will be sufficient to permit the conclusion that termination is appropriate." (*Id*. at p. 211 ["[j]urisdiction should not be terminated unless the court concludes services and ongoing supervision are not necessary to protect the child"].)

We review the juvenile court's decision whether to terminate jurisdiction at the disposition hearing for abuse of discretion.  (See *In re Destiny D., supra*, 15 Cal.App.5th at p. 213; see also *Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300-301.)

Here, the court acted well within its discretion in determining that continued jurisdiction over Serenity and Levi was necessary.  It is true Aaron had maintained a safe home for the children since the domestic violence incident, obtained a temporary restraining order and  a stay away order, and filed for dissolution of the marriage.  However, as discussed, the domestic violence incident had occurred during a period of estrangement, thus it was not assured that Aaron and Vanessa would refrain from violent contact absent additional counseling and Department supervision, especially in light of the conflicting reports as to whether they intended to reconcile.  In addition,

16

because of the stay away order, the Department had handled the scheduling and coordination of the children's visits with Vanessa in the four months the case was pending.  There was no evidence the parents would have immediately been able to peacefully coparent without additional supervision.  Based on this record, the court acted well within its discretion in determining the family needed continued supervision.

## DISPOSITION

The jurisdiction findings and disposition order are affirmed.

PERLUSS, P. J.

We concur:

SEGAL, J.

FEUER, J.

17